IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRYAN BANKS                                                PLAINTIFF

    v.                Case No. 05-5217

HARTFORD LIFE AND
ACCIDENT INSURANCE CO.                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.,* against his disability insurance provider, Hartford Life and Accident Insurance Co. (hereinafter "Defendant" or "Hartford"). Plaintiff challenges Defendant's denial of benefits under his employer's, Wal-Mart Stores, Inc. (hereinafter "Wal-Mart"), group disability insurance policy provided by Hartford (hereinafter "The Plan"). He seeks total disability benefits from January 15, 1999, and forward, as provided by the policy, twelve percent penalty, reinstatement of his life, medical, and dental insurance, reasonable attorney fees, pre-judgment interest, and all other costs or relief to which he is entitled. The matter is before the Court on the Stipulated Administrative Record and the parties' briefs. (Doc. 8, Doc. 10.) For the reasons set forth herein, we conclude that the Plaintiff's suit is barred by the three-year contractual limitations period contained in the Plan, and is

1

therefore, dismissed with prejudice. Although it is only necessary to address the filing limitation period issue, the Plaintiff could not prevail if we considered the merits of his case.

**A.   Background**

Plaintiff began employment with Wal-Mart in 1976. (AR 29.) Wal-Mart employed Plaintiff in an executive position as Senior Vice President of Replenishment and Inventory Management/Merchandise. (AR 609.) According to Wal-Mart, his job was primarily a desk job, but was not a "stationary" desk job; he would be up and down out from his desk, visiting with areas that needed his assistance, attending meetings, coaching by walking around, performing some computer and telephone work and some travel. (AR 62.) During Plaintiff's employment, he was included within coverage of Wal-Mart's group disability insurance policy provided by Hartford. The insurance policy included short and long term benefits for total disability.

In 1998, Plaintiff began complaining of primary upper back and lower neck pain. On May 6, 1998, Plaintiff saw Dr. Robert Holder, his family practice physician, for complaints of back pain. (AR 491.) Dr. Holder noted the Plaintiff had "tender muscles in the upper back but nothing dramatic". (*Id.*) During the next six months, Dr. Holder treated Plaintiff for problems with insomnia, high stress, and a golf injury. (AR 497-98.)

On December 3, 1998, Plaintiff was seen by Dr. Luke Knox, a neurosurgeon, with the North West Arkansas Neurosurgery Clinic. (AR 570.) Dr. Knox found no neurological abnormality. Although Plaintiff's plain films were relatively normal, Dr. Knox noted multiple degenerative disc disease during review of his MRI scan. However, Dr. Knox also noted these findings did not correlate with his symptomatic complaints, and that he was not a surgical candidate. (*Id.*)

On December 7, 1998, Plaintiff was evaluated by Dr. Anne Miller, a rheumatologist. Dr. Miller examined his peripheral joints, as well as his axial and thoracic spine and found no evidence of tender points, osteoarthritis or fibromyalgia. (AR 571.) Her opinion was that Plaintiff suffers from muscle spasms in the mid and upper back areas. (AR 572.) On January 11, 1999, Dr. Holder noted that Plaintiff was "having increasing back pain... His job require[d] that he have prolonged frequent sit down meetings... Surprisingly he [was] able to swim which help[ed] to relieve the pain... Walking [was] helpful to a point." (AR 501.) On January 14, 1999, Plaintiff worked his last day for Wal-Mart. (AR 621.)

Plaintiff saw Dr. David Cannon, a pain-management physician in February of 1999. (AR 573.) Dr. Cannon noted that Plaintiff had "undergone chiropractic manipulation with some improvement and physical therapy with temporary

3

improvement." (*Id.*) He also noted that Plaintiff was "not particularly tender over the mid-portion of the thoracic spine unless he exaggerate[d] his extension" and that "trigger point injections would not be beneficial." (*Id.*) Dr. Cannon also pointed out that Plaintiff "has a home exercise program in which he walks five miles a day and swims up to one mile a day, as well as some stretching exercises", and that he [was] "considering disability but [was] not sure what he would do." (AR 575.) In late February 1999, Dr. Holder noted that Plaintiff had been walking and swimming, his back was "25% better", and that he could "sit for an hour at a time without getting pain which requires him to get up and move around." (AR 502.) On March 1, 1999, Dr. Cannon wrote that he felt that Plaintiff's "sit down job exacerbates his symptoms of his upper spine pain... It would be in his best interest if he was not required to sit for long periods of time, although he can sit for short periods of time with numerous changes in position, periods of time where he can get up and walk around..." (AR 577.)

On April 21, 1999, Plaintiff filed a claim with Hartford for long term disability policy benefits. In a portion of the claim form, Dr. Holder stated that Plaintiff's back pain was "related to prolonged sitting over one hour." (AR 610.) Dr. Cannon submitted a letter on April 29, 1999, in which he stated

4

that he "believe[d] it would be difficult for him to maintain his current work status where he is required to sit for long periods of time, including traveling, sitting at a desk, and working where he is not able to get up and walk around with frequent breaks." (AR 589.) On May 29, 1999, Hartford wrote letters to Dr. Cannon, Dr. Holder, and Dr. Knox stating that it was Hartford's opinion that Plaintiff "would be capable of performing his occupation. He is able to change positions in his occupation frequently... If he experiences any pain from sitting, [he] could alter his sitting position or walk and stand." (AR 515-16.) Hartford requested the physicians to respond if they disagreed with the holding. (*Id.*) Dr. Holder responded that he believed that the "nature of his profession" would prevent him from walking or standing when necessary. (AR 427.) Dr. Cannon responded that he does not make the determination whether a patient is disabled and unable to work. (AR 512.) Dr. Knox did not respond.

On June 14, 1999, Hartford inquired about Plaintiff's ability to change postural positions in his job. Wal-Mart responded that, per its chief executive officer, Plaintiff "does have the capability to change postural positions in his job." (AR 476.) On June 15, 1999, the Social Security Administration denied Plaintiff's request for disability benefits as his "condition [was] not severe enough to keep him

5

from working." (AR 418-21.) On June 17, 1999, Plaintiff wrote a letter to Hartford claiming that it was not only sitting that bothered him in January 1999 but standing had also caused pain. (AR 478-79.) Plaintiff further wrote that exercising three times a day, seven days a week has gradually improved his condition. He also stated that although he stood for two and one-half hours at his going away party, he could not have stood for more than four hours. (*Id.*)

On July 1, 1999, Hartford advised Dr. Holder that Wal-Mart stated Plaintiff had the capability to change postural positions in his job. (AR 475.) Hartford asked Dr. Holder if he still believed Plaintiff to be disabled and unable to work. (*Id.*) Dr. Holder requested a copy of Wal-Mart's statement. (AR 473.) On July 2, 1999, Plaintiff called Hartford and stated that he wished to withdraw his benefits claim. (AR 469.) Plaintiff later explained in a letter that he was withdrawing his claim due to an improvement in his health problem and that he believed he would eventually make a complete recovery. (*Id.*) On July 30,1999, Dr. Holder wrote in a letter that Plaintiff's condition appears to be more of an "inflammatory condition" and that "he should do well with regular exercise and stretching." (AR 334.)

It doesn't appear from the administrative record that Plaintiff saw Dr. Cannon for pain therapy after April 1999.

However, Plaintiff continued to see Dr. Holder. On August 2, 2000, Dr. Holder noted that Plaintiff's "degenerative disc disease had pretty much burned itself out", and that "he walks almost four miles a day and swims several days a week." (AR 283.) On June 26, 2001, Dr. Holder reported that Plaintiff had a completely normal physical and no muscle complaints. (AR 349.) A hospital note in December 2001 stated that Plaintiff "walks three miles per day, swims almost a mile a day, four days a week and tries to play golf one or two times per week." (AR 375.)

On March 8, 2002, Plaintiff submitted a request to Hartford to reopen his benefits claim. (AR 457.) Plaintiff stated that his back condition had not improved and that he had withdrawn his claim only because he was told by his "primary care physician" that "the insurance company would harass [him], use intimidation tactics, try to discredit [him], have people follow [him] around, watch [his] home, and that in the end the insurance company would deny [him]." (AR 458.) Plaintiff stated that he "did not have the physical or mental strength to fight a very large company" and "had the feeling that it was probably inappropriate for a member of Wal-Mart management at [his] level to be on disability". (AR 459.) In April 2002, Dr. Holder wrote Hartford that he would not be able to give a disability rating, but that he was aware that the Plaintiff

7

continues to complain of subjective pain. (AR 338.)

On April 15, 2002, Plaintiff was evaluated by Dr. Vincent Runnels, a neurologist, who reported that his neurological exam was normal. (AR 242.)

Dr. Todd Lyon, a physician with the Medical Advisory Group, was selected and requested by Hartford to perform an independent medical evaluation of the Plaintiff. Dr. Lyon reviewed the Plaintiff's claim file, including medical records, and interviewed Dr. Holder. On June 7, 2002, Dr. Lyon submitted an eight page report to Hartford. (AR 202-10.) Dr. Lyon noted that Dr. Holder would not render a specific opinion about whether Plaintiff was capable of working. (AR 206.) Dr. Lyon further stated that Plaintiff "is clearly engaging in a high level of aerobic activity which would be consistent with meeting the demands of at least light work on a full-time basis." (AR 207.) Dr. Lyon concluded that he believed that Plaintiff retained the functional capabilities to meet the demands of full-time sedentary and full-time light work. He stated that if accommodations can be made at work such that [Plaintiff] was able to change positions frequently, such as every fifteen to thirty minutes, he should be able to function at his previous occupation. (AR 209-10.)

On June 14, 2002, Hartford determined that Plaintiff was not Totally Disabled from performing the essential duties of

8

his occupation throughout and beyond the Elimination Period, and denied Plaintiff's claim for policy benefits. (AR 191.) On June 19, 2002, Plaintiff appealed to Hartford's Appeal Unit. Hartford selected and requested another independent medical evaluation from Dr. Barry Turner, an Orthopedic Surgeon with The University Disability Consortium. Dr. Turner reviewed the Plaintiff's claim file, including the medical records, and interviewed Dr. Cannon and Dr. Holder. (AR 87,96.) In December 2002, Dr. Turner submitted to Hartford a sixteen page report. (AR 87-102.) Dr. Turner stated that he seriously questions the severity of Plaintiff's alleged symptoms. Dr. Turner stated it was unusual for Plaintiff to have sought orthopedic treatment for his elbow pain, but not for his primary orthopedic complaint. (AR 99.) Dr. Turner also commented that both Dr. Holder and Dr. Lyon were surprised that Plaintiff could exercise vigorously but could not perform his sedentary work. (AR 100.) Dr. Turner stated that "the noted discrepancies and inconsistencies are obvious". (*Id.*) Dr. Turner concluded that based on the job description provided by Wal-Mart, and his ability to change postural positions at will, it was his opinion that the Plaintiff was capable of performing his own occupation during the Elimination Period. (AR 102.)

On December 24, 2002, Hartford's Appeal Unit denied

9

Plaintiff's appeal. The unit stated it had reviewed the claim file and engaged Dr. Turner to perform an independent evaluation, but had found no basis to overturn the decision made in June 2002. (AR 59.) Plaintiff exhausted all his administrative remedies and filed this suit.

**B. Discussion**

In response to Plaintiff's motion, Hartford moved for summary judgment on alternative grounds, arguing that the claim is barred "under the Policy's contractual limitations and under any applicable statute of limitations", and that it did not abuse its discretion in denying Plaintiff's claim for policy benefits. In its supporting brief, Hartford cited an Arkansas case upholding reasonable contractual limitation periods within disability insurance policies. See *Wilkins v. Hartford Life and Accident Ins. Co.*, 299 F.3d 945 (2002) (enforcing a three-year limitations period in an insurance policy). Plaintiff did not address the contractual limitations issue in his brief and filed no reply to Defendant's response.

Hartford relies upon the following Plan provision:

> Legal action cannot be taken against the Hartford... after the shortest period allowed by the laws of the state where the policy is delivered. This is 3 years after the time written proof of loss is required to be furnished according to the terms of the policy.

10

This provision appears on page 22 of Hartford's group insurance policy. Hartford contends that the policy was delivered in the State of Delaware. Delaware claims are governed by a three-year contractual limitations period. *Rich v. Zeneca Inc.,* 845 F. Supp. 162, 164-66 (1994). In Arkansas, a claim for ERISA benefits based on a written contract is governed by the five-year statute of limitations found in Arkansas Code Annotated § 16-56-111(a). However, the statute "establishes a maximum, not a minimum" limitations period. *Hawkins v. Heritage Life Ins. Co.,* 63 Ark. App. 67, 973 S.W.2d 823, 826 (1998). In Arkansas, "parties are free to contract for a limitation period which is shorter than that proscribed by the applicable statute of limitations, so long as the stipulated time is not unreasonably short." *Ferguson v. Order of united Commercial Travelers of America,* 307 Ark. 452, 821 S.W.2d 30, 32 (1991). In *Wilkins v. Hartford Life & Accident Ins. Co.,* the Eighth Circuit Court of Appeals held that the agreement for a three-year limitations period in the policy at issue in this case is reasonable, and that the limitations period begins when Hartford finally denies the claim. 299 F.3d 945, 948-50 (8th Cir. 2002).

Whether applying Delaware law or Arkansas law, the result is the same. The three-year limitations period set out in the policy applies in this case. The three-year limitations period

11

in the policy is not unreasonable. It is clear from the record that Hartford denied Plaintiff's appeal and released its final decision, in correspondence to Plaintiff, dated December 24, 2002. Therefore, the three-year limitation period commenced on December 24, 2002. This suit was filed on December 30, 2005, more than three years after Hartford issued its final decision.

**C. Conclusion**

Based on the foregoing reasons, Plaintiff's ERISA claim is time-barred and his complaint must be dismissed with prejudice. Each party is to bear their own fees and costs.

IT IS SO ORDERED, this 20th day of September, 2006.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)